RICHARD L. COURTOIS *et al.*, Plaintiffs and Counterdefendants-Appellees, v. DONALD D. MILLARD *et al.*, Defendants and Counterplaintiffs-Appellants.

Fifth District   No. 5—87—0385

Opinion filed September 28, 1988.

Schniederjon, Weber & Jarrett, of Effingham, for appellants.

William W. Austin and Todd E. Schum, both of Parker, Siemer, Austin, Resch & Resch, of Effingham, for appellees.

PRESIDING JUSTICE HARRISON delivered the opinion of the court:

On October 8, 1985, Richard Courtois and Carolyn Courtois, plaintiffs, filed an action against Donald Millard and Marylla Millard, defendants, seeking the rescission of a contract for the sale of real es-

tate in Effingham, Illinois. The plaintiffs alleged in their action for rescission that the defendants, the sellers of the real estate, failed to attach a certificate of compliance with local dwelling codes or incorporate a written warranty to the real estate contract, dated March 5, 1980, as required by section 2 of "An Act relating to installment contracts to sell dwelling structures" (the Act) (Ill. Rev. Stat. 1985, ch. 29, par. 8.22), and that this failure made the contract voidable at their election. On November 5, 1985, the defendants moved for summary judgment on the grounds that the parties executed a contract for the same parcel of real estate on December 5, 1979, which contained the written warranty, and that the December 5, 1979, contract, along with the March 5, 1980, contract, formed the total agreement between the parties and satisfied the requirements of the Act. The circuit court of Effingham County denied the defendants' motion. The defendants then answered and counterclaimed on April 29, 1986, and sought: (1) damages for plaintiffs' waste; and (2) the reasonable rental value of the property for the five years that the plaintiffs were in possession. On April 28, 1987, the circuit court of Effingham County granted the plaintiffs' prayer for rescission and entered judgment for the plaintiffs. The court ordered the defendants to tender back the sum of the monthly installments, $27,252.34, to the plaintiffs, but offset this sum by: (1) $2,318.09, which the court found was waste to the premises beyond ordinary wear and tear; and by (2) $18,000, which the court found was the property's reasonable rental value for the 60 months the plaintiffs were in possession. After offsetting the plaintiffs' waste and the rental value of the property against the paid installments, the court found that the plaintiffs were entitled to recover $6,934.25 from the defendants. The defendants appeal. We affirm.

The defendants contend that: (1) the trial court erred in finding that the December 5, 1979, real estate contract executed between the plaintiffs and the defendants merged into the March 5, 1980, contract between the parties, where the first contract contained the express warranty required by section 2 of the Act (Ill. Rev. Stat. 1985, ch. 29, par. 8.22) and the second contract contained no modification, revocation or limitation of any of the provisions of the earlier contract other than as expressly contained in the subsequent contract; and (2) that the trial court erred in failing to find that the plaintiffs were guilty of *laches* and that equity barred their action for rescission.

■ The defendants initially argue that the first contract executed between the parties on December 5, 1979, incorporated the certificate of compliance with local dwelling codes as required by section 2 of the Act (Ill. Rev. Stat. 1985, ch. 29, par. 8.22) and that, therefore, the

defendants complied with the Act since the first contract and the March 5, 1980, contract formed the total agreement between the parties. Section 2 of the Act prescribes:

"After the effective date of this Act, any installment contract for the sale of a dwelling structure shall be voidable at the election of the buyer unless there is attached to the contract or incorporated therein a certificate of compliance, or in the absence of such a certificate (i) an express written warranty that no notice from any city, village or other governmental authority of a dwelling Code violation which existed in the dwelling structure before the installment contract was executed had been received by the contract seller, his principal or his agent within 10 years of the date of execution of the installment contract, or, (ii) if any such notice of violation had been received, a list of all such notices so received with a detailed statement of all violations referred to in such notice. The requirements of this section cannot be waived by the buyer or seller." (Ill. Rev. Stat. 1985, ch. 29, par. 8.22.)

Section 2 of the Act thus requires that any real estate installment contract contain: (1) a certificate of compliance with local dwelling codes; or (2) an express written warranty that the sellers have not received notice of any dwelling code violation within 10 years of the execution of the contract; or (3) if the sellers have received notice of dwelling code violations, then a list of all such notices and a detailed statement of all violations. (*Bledsoe v. Carpenter* (1987), 163 Ill. App. 3d 823, 828, 516 N.E.2d 1013, 1016.) The purpose of section 2 of the Act is to protect the buyer from possible violations of the dwelling codes by placing the burden of furnishing information concerning the condition of the property on the seller, so that the buyer is not required to conduct a record search for violations or make an independent inspection of the property. (*Shanle v. Moll* (1974), 25 Ill. App. 3d 113, 116, 323 N.E.2d 148, 151.) Installment sales contracts are inherently susceptible to a greater degree of seller overreach than are traditional real estate contracts and thus require greater protection for the buyer. (*Mack v. Seaman* (1983), 113 Ill. App. 3d 151, 155, 446 N.E.2d 1217, 1220.) Failure to comply with the nonwaivable conditions of the Act renders the contract voidable at the buyer's option. *Mack v. Seaman* (1983), 113 Ill. App. 3d 151, 156, 446 N.E.2d 1217, 1221.

The subject transaction clearly falls within the ambit of section 2 of the Act (Ill. Rev. Stat. 1985, ch. 29, par. 8.22). The parties executed an "installment contract" for the "sale" of a "dwelling

structure." The statute thus requires the sellers to attach to or incorporate in the installment contract either a certificate of compliance, a written warranty, or a list of notices of violations. The defendants do not dispute that the March 5, 1980, contract does not include the requisite certificate, warranty, or list of all notices of violations under section 2 of the Act, but contend that the court must consider the first contract, executed on December 5, 1979, as part of the total agreement between the parties and that this total agreement fulfills the requirements of the Act.

■■■ The defendants' contention that the first contract is part of the total agreement between the parties fails because the two contracts involve identical subject matter, and the second contract is a distinct agreement which merges and supersedes the first contract. A complete, valid, written contract merges and supersedes all prior and contemporaneous negotiations and agreements dealing with the same subject matter. (*Harris Trust & Savings Bank v. Chicago Title & Trust Co.* (1980), 84 Ill. App. 3d 280, 283, 405 N.E.2d 411, 414.) The first contract is in the nature of a form, with the blanks filled in by the parties. The second contract is drafted more specifically to the intentions of the parties and contains several provisions that are inconsistent with the first contract. The defendants have not in any way challenged the validity of the second contract. It is manifest that if this suit involved which of the two executed contracts this court should enforce, the defendants would admit that the second contract controlled the agreement between the parties to the exclusion of the first contract. However, in this instance, since the first contract includes a warranty which complies with section 2 of the Act, and this warranty is not included in the second contract, the defendants argue that the first contract retains some validity. We disagree. The inconsistencies between the two contracts evince the conclusion that the two parties intended for the second contract to control their agreement and to supersede the first contract. The second contract provides for a mortgage, which the first contract does not. The second contract contains casualty insurance requirements that were not a part of the first contract. The second contract contains default provisions not present in the first contract. The second contract also reveals no intention by the parties to incorporate any of the terms of the first contract. We find, therefore, that the second contract, executed on March 5, 1980, was a distinct and separate agreement that constituted the sole and entire contract between the parties, to the exclusion of the first contract. Since it is undisputed that the second contract does not include the warranty as required by section 2 of the

Act (Ill. Rev. Stat. 1985, ch. 29, par. 8.22), the plaintiffs were within their rights under the Act to rescind the contract.

■■ The defendants' argument that one must read the language of the first contract into the second contract also fails because under their perception of the totality of the two agreements, the sellers of the real estate could have deliberately concealed a notice of a dwelling code violation received between the execution of the first and second contracts. Under the defendants' perception of the two agreements, if the sellers had concealed the notice of the violation between the execution of the two contracts, they would not have breached the provisions of section 2 of the Act (Ill. Rev. Stat. 1985, ch. 29, par. 8.22) since the warranty in the first contract would carry over into the second contract. This would thwart the purposes of the Act by depriving the buyers of the real estate with the notice of the violation.

The defendants contend that where different instruments are executed between the same parties relating to the same subject matter, whether executed at the same time or at different times, the court must construe the instruments together in determining the real intention of the parties (see *Mayer v. Illinois Life Insurance Co.* (1918), 211 Ill. App. 285, 291), and that the failure of the parties to mention the warranty in the second contract means that the warranty contained in the first contract remains a viable term of the total agreement between the parties. This contention fails because the first and second contracts are distinguishable from each other and contain inconsistent terms. Only one of the two contracts could be valid. The execution of the second contract terminated the legal effect of the first contract, and the defendants' contention on this point fails.

The defendants also allege that the trial court erred when it failed to find that the equitable defense of *laches* barred the plaintiffs' action for rescission of the contract. The defendants contend that the plaintiffs were guilty of *laches* because they did not move to rescind the contract until five years after its execution, that counsel represented the plaintiffs at the time of this execution, that the plaintiffs had already executed one contract for the property which contained a warranty that complied with the Act, and that the plaintiffs failed to complain of the omission in the second contract until subsequent to their default. The defendants contend that the plaintiffs' undue delay in asserting their right to rescind the contract under the Act (Ill. Rev. Stat. 1985, ch. 29, par. 8.22) prejudiced them and that it would be inequitable to permit the plaintiffs to rescind under these circumstances.

■■ *Laches* is the "neglect or omission on the part of a complain-

ant to assert a right, taken in conjunction with a lapse of time, and other circumstances causing prejudice to an adverse party, which will operate as a bar to pursue the claim in a court of chancery." (*Lincoln-Way Community High School District 210 v. Village of Frankfort* (1977), 51 Ill. App. 3d 602, 611, 367 N.E.2d 318, 325, quoting *Matchett v. Rose* (1976), 36 Ill. App. 3d 638, 650-51, 344 N.E.2d 770, 781.) For *laches* to bar a suit, the delay must be such that, along with a lapse of time and other circumstances, it has caused prejudice to the defendant. (*Finley v. Finley* (1980), 81 Ill. 2d 317, 329, 410 N.E.2d 12, 18.) The trial court may invoke or reject *laches* in its sound discretion. *Finley v. Finley* (1980), 81 Ill. 2d 317, 330, 410 N.E.2d 12, 18.

■ We cannot say that the trial court abused its discretion in finding that the plaintiffs were not guilty of *laches*. Whether a party has been guilty of *laches* is a question addressed to the sound discretion of the trial court, and the court on review will not disturb the decision of the lower court unless the determination is so clearly wrong as to constitute an abuse of discretion. (*In re Estate of Bowman* (1986), 140 Ill. App. 3d 976, 979, 489 N.E.2d 489, 491.) The trial court must determine what constitutes *laches* by the facts and circumstances of each case. (*Worley v. Ehret* (1976), 36 Ill. App. 3d 48, 56, 343 N.E.2d 237, 243.) The record indicates that the plaintiffs elected to rescind the contract on August 28, 1985, shortly after they learned of their equitable rights under the Act. Thus we cannot hold that it was an abuse of discretion for the trial court to find that the plaintiffs did not neglect or omit to assert their rights.

■ The defendants claim that the lapse of time between the execution of the contract and the time of the rescission represents an undue delay. *Laches*, however, is not simply a matter of time. (*People ex rel. Casey v. Health & Hospitals Governing Comm'n* (1977), 69 Ill. 2d 108, 115, 370 N.E.2d 499, 502.) The trial court had the duty to discern whether the passage of time under these circumstances was unreasonable. Before *laches* can be invoked, there must be an unreasonable delay in asserting a right by the party against whom the doctrine is asserted. (*People ex rel. Village of Hazel Crest v. Village of Homewood* (1985), 132 Ill. App. 3d 632, 637, 478 N.E.2d 426, 430.) The court found that the passage of time did not constitute *laches*. The defendants' other contentions, that counsel represented the plaintiffs at the time of the execution of the contract, that the plaintiffs had already executed one contract for the property which contained a warranty that complied with the Act, and that the plaintiffs failed to complain of the omission in the second contract until subsequent to their default, are inapposite to a finding of *laches*. We need not reach the

issue of whether the defendants were prejudiced, since we cannot say that any unreasonable delay on the part of the plaintiffs occurred. We thus cannot find that the trial court abused its discretion.

For the foregoing reasons, we affirm the judgment of the circuit court of Effingham County.

Affirmed.

CALVO and LEWIS, JJ., concur.