SAMUEL M. SORKIN, Plaintiff-Appellant, v. BLACKMAN, KALLICK & COMPANY, LTD., *et al.*, Defendants-Appellees.

First District (2nd Division)   No. 1—88—0782

Opinion filed June 20, 1989.

Kahn, Robinson & Curley, of Chicago (C. Philip Curley and Alan F. Curley, of counsel), for appellant.

Laner, Muchin & Dombrow, of Chicago (Michael J. Ranallo and Neil P. Stern, of counsel), for appellees.

JUSTICE EGAN* delivered the opinion of the court:

This case involves the recurring problem arising from a complaint alleging damages as a result of a tort which the defendant claims is not a tort but an alleged breach of contract. The sole issue concerns the applicability of *Moorman Manufacturing Co. v. National Tank Co.* (1982), 91 Ill. 2d 69, 435 N.E.2d 443, and the subsequent case of *Morrow v. L.A. Goldschmidt Associates, Inc.* (1986), 112 Ill. 2d 87, 492 N.E.2d 181.

---

*Justice Egan participated in the decision of this case prior to his assignment to the sixth division.

Since this appeal is from an order dismissing the complaint, the following recitation of facts is based on the allegations of that complaint.

Samuel Sorkin, the plaintiff, is a certified public accountant. The defendant Blackman, Kallick & Company, Ltd. (Blackman), is a public accounting firm with offices in Cook County, Illinois. The individual defendants are some of the partners of Blackman and each allegedly participated in the management decisions for the firm relevant to this lawsuit. Defendant Blackman Kallick Bartelstein (BKB) is a partnership and public accounting and business consulting firm which maintains an office in and does business in Cook County, Illinois. BKB was formed in October 1986 when Blackman merged with another public accounting firm, Landau and Bartelstein. As a result of the merger, BKB assumed all liabilities of Blackman and thus is its successor in interest.

On July 17, 1984, after meeting with the principals of Blackman, the plaintiff agreed to join the firm in return for a 15% equity partnership to be announced by June 15, 1985, and granted no later than October 15, 1985. The agreement is reflected in an exchange of letters between Sorkin and the defendant Irving L. Blackman.

In reliance on the agreement to grant him an equity interest in the firm, he terminated his position with Coopers & Lybrand, a large accounting firm, at its Columbus, Ohio, office, and moved his family to Chicago. He also told his family, friends, colleagues, business associates and clients that he was going to become an equity partner in the firm. (He does not allege that the defendants told others of their purported promise or that the defendants were aware that the plaintiff had done so.)

The plaintiff began working at Blackman on September 14, 1984, as director of tax services. Although he performed his obligations under the agreement, he was told in June 1985 that Blackman was "changing the deal" and that his partnership would not be announced at that time. He was given a raise by the firm in July, but he was not told whether he would be made a partner on October 1, 1985, as promised. He was not made a partner on October 1, 1985.

In December 1985, Blackman told the plaintiff that it still might make him a partner; and in reliance on this representation, he remained at Blackman through the 1986 tax season. However, in April 1986, immediately after the tax season, Blackman told the plaintiff that it would never grant him an equity partnership, and as a result, the plaintiff left the firm in December of 1986.

On May 22, 1987, the plaintiff filed a five-count complaint against

the defendants based on their refusal to make him an equity partner. Count I alleges breach of contract. Count II is brought against the individual defendants for alleged interference with the agreement between him and Blackman. Count IV alleges fraud. Count V seeks recovery from Blackman and BKB for unpaid vacation pay and reimbursement for certain expenses. All of these counts are still pending in the trial court and are not an issue in this appeal.

Count III, titled "Willful and Wanton Damage to Reputation," was brought against all the defendants and seeks $500,000 compensatory and $250,000 punitive damages for the harm suffered by the plaintiff to his personal reputation, professional goodwill and standing in the business and public accounting communities as a result of the defendants' failure to make him an equity partner.

The complaint alleges that the defendants' conduct toward the plaintiff "was unreasonable and without justification, constituted willful and wanton misconduct on their part and as such is an independent and willful tort." The defendants "were conscious of their conduct and knew that that conduct would naturally and probably result in injury to the plaintiff's reputation and standing within the business and public accounting communities." "The defendants' conduct was aggravated by inducing the plaintiff to move to Chicago and fraudulent by the continuous representation" that he still might be made a partner even though the defendants had no intention of doing so. As a proximate result of this "willful and wanton misconduct," the plaintiff was "subjected to ridicule and embarrassment within the business and public accounting communities and suffered loss of reputation."

The defendants answered counts I, IV and V and moved to dismiss counts II and III pursuant to section 2—615 of the Illinois Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—615). The trial court heard argument and granted the motion to strike count II with leave to amend, which the plaintiff has since done. The court dismissed count III without leave to amend for failure to state a claim. Therefore, all of the factual allegations of count III are taken as true; and we will disregard the arguments that the defendants vigorously deny the allegations of the complaint and that the plaintiff was denied partnership because of certain deficiencies in performance.

The defendant asserts that count III was properly dismissed because it seeks tort damages for what amounts to a breach of contract. The trial judge agreed, and his dismissal was based principally on his interpretation of *Morrow v. L.A. Goldschmidt Associates, Inc.* (1986), 112 Ill. 2d 87, 492 N.E.2d 181. The plaintiff argues that *Morrow* supports his position.

A discussion of the issue appropriately begins with *Moorman Manufacturing Co. v. National Tank Co.* (1982), 91 Ill. 2d 69, 435 N.E.2d 443. In that case the plaintiff purchased a grain storage tank from the defendant. When a crack subsequently developed in the tank, the plaintiff sued under the tort theories of strict liability and negligence, seeking damages for the cost of repair and for the loss of the use of the tank. The court affirmed the dismissal of the strict liability and negligence counts, noting that the complaint alleged only a qualitative defect in the product itself and did not allege that the defective product caused physical injury or damage to persons or other property. The court held that recovery for purely economic loss is more appropriately governed by contract rather than tort principles and defined "economic loss" thus:

> " 'Economic loss' has been defined as 'damages for inadequate value, costs of repair and replacement of the defective product, or consequent loss of profits—without any claim of personal injury or damage to other property ***' (Note, *Economic Loss in Products Liability Jurisprudence*, 66 Colum. L. Rev. 917, 918 (1966) (*Economic Loss*)) as well as 'the diminution in the value of the product because it is inferior in quality and does not work for the general purposes for which it was manufactured and sold.' (Comment, *Manufacturers' Liability to Remote Purchasers for 'Economic Loss' Damages—Tort or Contract?* 114 U. Pa. L. Rev. 539, 541 (1966).)" 91 Ill. 2d at 82.

The court drew a distinction between disappointed expectations, which cause only economic harm and for which the remedy lies in contract, and physical injury to person or property, which causes noneconomic harm for which a tort cause of action is available:

> "When the defect is of a qualitative nature and the harm relates to the consumer's expectation that a product is of a particular quality so that it is fit for ordinary use, contract, rather than tort, law provides the appropriate set of rules for recovery. (*E.g., Pennsylvania Glass Sand Corp. v. Caterpillar Tractor Co.* (3rd Cir. 1981), 652 F.2d 1165, 1169, 1172-73.)" 91 Ill. 2d at 88.

This distinction was continued in *Morrow v. L.A. Goldschmidt Associates, Inc.* (1986), 112 Ill. 2d 87, 492 N.E.2d 181, the case upon which the trial court relied and both sides cite in support of their respective positions. In *Morrow*, purchasers of four townhouses which were designed, constructed and sold by the defendants brought suit against the defendants for breaches of express warranty and an implied warranty of habitability based on the alleged defects. The su-

preme court affirmed the trial court's dismissal of the counts alleging willful and wanton misconduct. Relying on *Moorman*, the *Morrow* court stated that since the gist of the plaintiffs' complaint was that they did not receive the benefit of the bargain, any harm would be appropriately remedied by an action for breach of contract. Said another way, there must be noneconomic loss "above and beyond disappointed expectations" in order to state a cause of action in tort. (112 Ill. 2d at 98.) Since the plaintiffs did not allege any allegation of physical injury or damage to other property, the court would not impose tort liability even where the breach of contract was willful and wanton.

A divergence of views arose in this State's appellate districts over the applicable breadth of *Moorman*. It would unjustifiably lengthen this opinion to discuss those conflicting views since they are exhaustively discussed and analyzed by the first appellate district in *Rosos Litho Supply Corp. v. Hansen* (1984), 123 Ill. App. 3d 290, 462 N.E.2d 566, and by the second appellate district in *Bates & Rogers Construction Corp. v. North Shore Sanitary District* (1984), 128 Ill. App. 3d 962, 471 N.E.2d 915, *aff'd on other grounds* (1985), 109 Ill. 2d 225, 486 N.E.2d 902. In any event, the plaintiff here does not dispute the applicability of *Moorman* or *Morrow* to an employment agreement. (A recent opinion of the Appellate Court, First District, has held that *Moorman* does apply to employment agreements. (*Werblood v. Columbia College* (1989), 180 Ill. App. 3d 967, 536 N.E.2d 750.)) It is his contention that he meets the requirements of *Moorman* in that he alleges non-economic loss.

The heart of the plaintiff's argument is set out as follows:

> "[The complaint] alleges non-economic harm suffered as a result of defendant's conduct and, therefore, states a cause of action in tort. There are also sufficient allegations of aggravating circumstances such that punitive damages are recoverable."

He concedes implicity that if the complaint does not allege any non-economic loss the complaint must fall. The non-economic loss upon which he bases his claim is "damage to reputation or good will." For support he refers to the special concurring opinion in *Moorman*. We do not believe that that opinion may be read as a pronouncement that such damages are non-economic losses. The thrust of that opinion, which, it must be kept in mind, involved a products liability action and was not the view of the other six justices, was that the determination of whether a loss is economic or non-economic should not depend on whether there was *physical* harm.

Our research has disclosed only one case involving a definition of "non-economic loss." (*Donovan v. Rapid Ray's Printing & Copying*,

*Inc.* (1978), 93 Misc. 2d 750, 403 N.Y.S.2d 407.) In that case a statute granted a cause of action but excluded recovery for non-economic loss. The statute defined "non-economic loss" as "pain and suffering and similar non-monetary detriment." *Donovan,* 93 Misc. 2d at ____, 403 N.Y.S.2d at 409.

■ The Illinois legislature has defined the term in the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—1702) as follows:

"(a) 'Economic loss' means all pecuniary harm for which damages are recoverable.

(b) 'Non-economic loss' means loss of consortium and all non-pecuniary harm for which damages are recoverable, including, without limitation, damages for pain and suffering, inconvenience, disfigurement, and physical impairment."

■ In *CMO Graphics, Inc. v. CNA Insurance Co.* (1983), 115 Ill. App. 3d 491, 450 N.E.2d 860, the appellate court held, without comment, that lost goodwill was an economic loss.

■ The complaint says that the defendants knew that their conduct would result in "injury to the [the] plaintiff's reputation and standing within the business and public accounting communities." It also says that the plaintiff "was subjected to ridicule and embarrassment within the business and public communities and suffered loss of reputation." Those are allegations that the harm done to the plaintiff caused his ability to make money to be diminished and, in our judgment, are allegations of economic loss. Therefore, if for no other reason, the plaintiff's argument must fall; and so must the complaint.

■ There is another aspect of the plaintiff's argument that should be addressed. He contends that the defendants' conduct was unreasonable and without justification, constituted willful and wanton misconduct on their part and as such is an independent and willful tort. The precedential underpinning of the plaintiff's claim that there is a separate tort called aggravated negligence is the appellate court opinion in *Morrow v. L.A. Goldschmidt Associates, Inc.* (1984), 126 Ill. App. 3d 1089, 468 N.E.2d 414. We agree the appellate court did so hold; but we do not agree with the plaintiff's assertion that the supreme court reversal was on other grounds, thus leaving the appellate court's holding untouched. The appellate court in *Mucklow v. John Marshall Law School* (1988), 176 Ill. App. 3d 886, 531 N.E.2d 941, has construed the supreme court's opinion in *Morrow* to be a rejection of the appellate court's holding that there existed a separate tort of willful and wanton misconduct. If there be any doubt in the matter, it is our judgment that the trial court was correct in *Morrow* in holding that willful and wanton misconduct was not an independent tort. Willful and wanton mis-

conduct affects the amount of damages and is not a separate tort.

We interpret the complaint to allege that the plaintiff entered into an employment agreement with the defendants. Part of the consideration for that agreement was the defendants' promise to make him an equity partner on or before October 1, 1985. The defendant did not keep its agreement on October 1 but told the plaintiff in December 1985 that it "still might make him a partner as earlier agreed." In his reliance on the representation that Blackman might make him a partner, the plaintiff remained working for the defendants. In April 1986 the defendants told him they would never make him a partner. He continued to work for the defendants for another nine months. In reliance on the agreement to make him an equity partner, the plaintiff had told his family, friends and business clients he was going to be made a partner. The defendants' conduct was fraudulent by the continuous representation even after October 1985 that the plaintiff "might" still be made a partner when the defendants had no intention of doing so.

■ Candor compels us to identify this count for what it is: a hybrid created by a combination of the fraud count and the breach of contract count by which the plaintiff seeks to vault over the obstacles in his path that exist in those counts. To illustrate, generally, to establish fraud the plaintiff must prove that the defendants misrepresented an existing or past fact; a promise to do something in the future is insufficient to establish fraud. An exception exists where the false promise or representation of future conduct is alleged to be the scheme employed to accomplish the fraud. (*Steinberg v. Chicago Medical School* (1977), 69 Ill. 2d 320, 371 N.E.2d 634.) We are constrained to note, as we believe the plaintiff has recognized, that there may be difficulty in proving that the defendants made misrepresentations which were part of a preexisting scheme to defraud. See *Donnelly v. Washington National Insurance Co.* (1985), 136 Ill. App. 3d 78, 482 N.E.2d 424.

■■ ■ With respect to the breach of contract count, the general law is that punitive damages are not recoverable (*Wallace v. Prudential Insurance Co.* (1973), 12 Ill. App. 3d 623, 299 N.E.2d 344) and any compensatory damages are limited to those which are the natural and probable consequences of the breach as the parties contemplated. (*Kalal v. Goldblatt Brothers, Inc.* (1977), 53 Ill. App. 3d 109, 368 N.E.2d 671.) There is authority that damages to business reputation are not recoverable in a breach of contract action. (*Chrysler Corp. v. E. Shavitz & Sons* (7th Cir. 1976), 536 F.2d 743.) Interestingly, the plaintiff does not plead such damages in the breach of contract count. That omission is understandable. Although we recognize the right to plead in the alternative, by pleading that the damage to his reputation was a

natural and probable consequence of the breach as the parties contemplated, the plaintiff would be undercutting his claim that he met the requirements of *Morrow* that the damages were "above and beyond disappointed expectations." *Morrow*, 112 Ill. 2d at 98.

■ The bar to punitive damages in contract cases is excepted where the breach also constitutes a separate tort. The plaintiff again argues that the separate tort in this case is "aggravated negligence." We have already expressed the view that willful misconduct is not a separate tort as, we contend, the supreme court did also in *Morrow*; but we will add some other observations. In his reply brief the plaintiff maintains that count III should be "properly analyzed as stating a cause of action for simple negligence entitling plaintiff to compensatory damages, which further alleges that defendants acted recklessly and with conscious disregard for plaintiff's personal and property rights." This is a seeming departure from his argument based on the appellate court opinion in *Morrow*. His new argument is nonetheless understandable, because it is the law that punitive damages may not be recovered in the absence of actual or compensatory damages. (*Tonchen v. All-Steel Equipment, Inc.* (1973), 13 Ill. App. 3d 454, 300 N.E.2d 616.) That rule denying punitive damages in the absence of actual damages illustrates the untenability of the appellate court's holding in *Morrow* that there is a separate and independent tort of aggravated negligence. In any event, we reject the plaintiff's argument that he alleges simple negligence.

In sum, the observations of the supreme court in *Morrow* are appropriate here (*Morrow*, 112 Ill. 2d at 98):

> "Simply characterizing a breach of contract as 'willful and wanton' does not change the fact that plaintiffs are only seeking recovery for harm to a contract-like interest. We cannot agree that a breach of contract becomes a tort just because the breach was willful and wanton."

For these reasons we hold that the trial court did not err in dismissing the complaint and holding that no set of facts could be pleaded to establish a cause of action under the theory advanced in count III; and the judgment of the circuit court is affirmed.

In light of our holding we need not discuss the other grounds advanced by the defendants to support dismissal.

Judgment affirmed.

BILANDIC, P.J., and SCARIANO, J., concur.