**FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for Cosmopolitan National Bank of Chicago, Plaintiff,**

v.

**Albert J. BRUNO, Defendant.**

**No. 91 C 3730.**

United States District Court, N.D. Illinois, E.D.

Nov. 19, 1991.

---

Jeffrey A. Schulman, Wolin & Rosen, Ltd., Chicago, Ill., for Cosmopolitan Nat. Bank of Chicago.

Shelly Byron Kulwin, Chicago, Ill., for Bruno.

William A. Spence, Steven Michael Hartmann, John E. Farrell, Freeborn & Peters, Chicago, Ill., Michael Charles Timothy, Sandra Jill Mientus, Federal Deposit Ins. Corp., Rosemont, Ill., for Federal Deposit Ins. Corp.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

There are two distinct but related motions pending before this court. The first is a motion by defendant Albert J. Bruno to open and vacate the confession judgment entered against him, and to permit him to file an answer to the complaint. The second is original plaintiff Cosmopolitan National Bank of Chicago's ("Cosmopolitan" or "bank") motion to strike portions of Bruno's reply brief supporting the motion to open and vacate the confession judgment.[1] For the reasons set forth below, we grant Bruno's motion and deny as moot Cosmopolitan's motion.

### I. Bruno's Motion to Open Judgment

On December 11, 1990, Cosmopolitan obtained a confession judgment against Bruno for $522,006.95. Bruno filed his motion to open and vacate that judgment on January 7, 1991. He contends that he has at least three meritorious defenses: fraudulent inducement, lack of consideration, and lack of delivery. He attaches his affidavit and verified proposed answer to the motion. Cosmopolitan responded as directed by the state court and filed a counteraffidavit.

In Illinois, the procedure by which a party may petition a court to open a judgment by confession is set forth in state supreme court Rule 276, which provides that:

---

1. Both motions were fully briefed before the Circuit Court of Cook County, Illinois when the Federal Deposit Insurance Corporation ("FDIC") was appointed as Receiver for Cosmopolitan pursuant to 12 U.S.C. § 1821(c)(2)(A)(ii) (1988). *See* Petition for Removal at 2. The FDIC as Receiver is now the "owner and holder" of the claims between Cosmopolitan and Bruno. *Id.* For convenience and clarity, we will discuss the issues herein as issues involving the bank and Bruno, though we recognize that the FDIC is the official party to the action as a matter of law.

A motion to open a judgment by confession shall be supported by affidavit ..., and shall be accompanied by a verified answer which defendant proposes to file. If the motion and affidavit disclose a *prima facie* defense on the merits to the whole or a part of the plaintiff's claim, the court shall set the motion for hearing. The plaintiff may file counteraffidavits.

Ill.Ann.Stat. ch. 110A, para. 276 (Smith–Hurd 1985).

■ Our inquiry is confined to a determination of whether or not the motion and affidavit disclose a *prima facie* defense; we are foreclosed from inquiring "into the facts of the cause." *National Boulevard Bank of Chicago v. Corydon Travel Bureau, Inc.*, 95 Ill.App.2d 281, 285, 238 N.E.2d 81, 83–84 (1st Dist.1968). More recent state court interpretation of Rule 276 makes it clear that "[i]n determining whether allegations of a meritorious defense have been presented, the court must accept as true those facts asserted by defendant[ ] in [his] affidavit[ ]." *E.g., Colonial Bank & Trust Co. v. Kozlowski*, 106 Ill.App.3d 639, 642, 62 Ill.Dec. 279, 281, 435 N.E.2d 1251, 1253 (1st Dist.1982). Cosmopolitan's counteraffidavit will be considered "only to the extent that [it is] consistent with the allegations" made by Bruno. *Herget Nat'l Bank of Pekin v. Theede*, 181 Ill.App.3d 1053, 1056, 130 Ill.Dec. 780, 782, 537 N.E.2d 1109, 1111 (3d Dist.1989). We will specifically disregard those parts of Cosmopolitan's counteraffidavits which go to the merits of Bruno's asserted defenses. *Baker v. Gray*, 141 Ill.App.3d 444, 445–46, 95 Ill.Dec. 748, 749, 490 N.E.2d 221, 222 (4th Dist.1986). A motion under Rule 276 is addressed to the court's "sound legal discretion," and is to be considered "under liberal, equitable principles"; "the right to present a defense is considered an exercise of the conscience of the court." *Corydon Travel*, 95 Ill.App.2d at 285, 238 N.E.2d at 84.

***A. Bruno's Affidavit***

■ Bruno's motion and affidavit [2] state the following. On or about November 3, 1989, Bruno received a telephone call from John Christopher, a longtime personal friend. At Christopher's request, Bruno met his friend that same day in Cosmopolitan's lobby. Christopher told Bruno that his business credit line at the bank was overdrawn, and that he needed Bruno's help. The two men then met with Gerald DeNicholas, Cosmopolitan's executive vice president and chief financial officer.

DeNicholas told Bruno that Christopher's company, MCC, was overdrawn by $1.3 million, but that Cosmopolitan knew that MCC had collectible receivables of nearly $3 million. The bank was going to collect these receivables to "pay down MCC's line of credit." DeNicholas further told Bruno that if he would agree to borrow $500,000 from Cosmopolitan and use it to help pay off MCC's overdraft, Cosmopolitan "would apply the first one-half million dollars of MCC receivables it collected to pay off that loan."

According to Bruno, DeNicholas told him that "by doing this [Bruno] would be not only helping out Mr. Christopher, but also the Bank officials and that I need not worry about the loan debt because the Bank would be able to make the payment on it with the proceeds from the MCC receivables." With DeNicholas' assurance that he was not at risk because of the outstanding receivables, coupled with a desire to help his old friend, Bruno agreed to borrow the money. DeNicholas then pulled out a $500,000 note, which had already been prepared, and Bruno signed it.

Having secured Bruno's signature, DeNicholas handed over a $500,000 check, already typed payable to Bruno, which Bruno endorsed and gave back to the bank officer. DeNicholas then gave it to Christopher and told him to deposit it in MCC's business account.

Bruno contends that following this transaction, Cosmopolitan did not take the pro-

---

**2.** We incorporate those portions of Cosmopolitan's counteraffidavit that are consistent with Bruno's affidavit.

ceeds it accrued from MCC's receivables and apply them to Bruno's note, as DeNicholas had told Bruno the bank would do. Instead, Cosmopolitan applied the proceeds to MCC's line of credit owing to the bank. Bruno steadfastly maintains that "[h]ad [he] known that the Bank was not going to apply its collections on MCC receivables to pay down the $500,000 Note to them *before* paying down MCC's other indebtedness to the Bank, as Mr. DaNicholas [sic] had represented to me when I signed that Note, I would not have signed the $500,000 Note to the Bank."

## B. *Case Law Analogies*

We are satisfied that these allegations disclose a *prima facie* defense of fraudulent inducement. *See Colonial Bank & Trust,* 106 Ill.App.3d at 643, 62 Ill.Dec. at 281–82, 435 N.E.2d at 1253–54; *see also Lee v. Heights Bank,* 112 Ill.App.3d 987, 68 Ill.Dec. 514, 446 N.E.2d 248 (3d Dist.1983). In *Colonial Bank & Trust,* defendants needed funds to invest in a popcorn kiosk. An agent of Big Top Popcorn, Inc. suggested that defendants visit a certain bank and meet with a friend of his to secure a loan. That friend, a bank officer, told defendants that the bank was also investing in Big Top Popcorn "and that such an investment was a 'sure thing.'" Defendants borrowed money from the bank, signed a note, and made payments on the note. The business subsequently failed. The bank then obtained a confession agreement on the note. Defendants moved to open the judgment under Rule 276 on the basis that the bank's agent had fraudulently obtained their signatures on the note with oral representations suggesting the bank's confidence in Big Top Popcorn. The trial court granted defendants' motion, a ruling upheld by the state appellate court. *Colonial Bank & Trust,* 106 Ill.App.3d at 643, 62 Ill.Dec. at 281–82, 435 N.E.2d at 1253–54.

The appellate court explicitly found that the bank officer's "representations regarding [the bank]'s involvement and confidence in Big Top were misrepresentations of material fact calculated to disarm [defendants] and induce them into signing as guarantors of the note." *Id.* at 643, 62

Ill.Dec. at 282, 435 N.E.2d at 1254. Additionally, because the individual was the bank's loan officer, defendants "were justified in relying upon his representations when making their decision to sign the guaranty." *Id.*

The facts in *Heights Bank* are analogous to those in *Colonial Bank & Trust,* and to those in the case before us. In *Heights Bank,* a bank officer asked plaintiff to co-sign a noted for a fellow customer as "an accommodation party." *Heights Bank,* 112 Ill.App.3d at 990, 68 Ill.Dec. at 517, 446 N.E.2d at 251. Plaintiff initially refused to sign the note. When the bank officer told him that he would be doing the bank a favor by signing, and that the note was fully secured by the fellow customer's stock assets (which were in the bank's possession), plaintiff signed the note. The bank officer, however, failed to inform plaintiff that those assets had been sold, and were not available to secure the loan. The original loan customer defaulted on the loan and the bank attempted to collect from plaintiff. The court found that the bank through its officer "induced [plaintiff] to sign the original note through a representation that the note was secured when in fact it was not.... [Plaintiff] proved by clear and convincing evidence that he was fraudulently induced to cosign the note...." *Id.* at 993, 68 Ill.Dec. at 518–19, 446 N.E.2d at 252–53.

As Bruno points out in his reply brief, Bruno met with Cosmopolitan officer DeNicholas before signing the note. DeNicholas told Bruno that MCC was overdrawn, but that the bank knew the company had $3 million in collectible receivables. DeNicholas suggested that Bruno's help would be a favor both to Bruno's friend Christopher and to the bank. There was no risk because MCC's receivables would be applied to pay off the note. Bruno signed the note in reliance on DeNicholas' representations. These allegations are well within the *Colonial Bank & Trust* and *Heights Bank* sphere.

## C. *Cosmopolitan's Counterarguments*

Cosmopolitan offers several arguments in opposition. It contends that Bruno has

not succeeded in pleading all of the requisite elements of fraud—specifically, that there has been no allegation of a false statement of material fact, or that the party making the statement knew or believed it to be false. *See generally Board of Educ. v. A, C & S, Inc.*, 131 Ill.2d 428, 452, 137 Ill.Dec. 635, 646, 546 N.E.2d 580, 591 (1989) (setting out elements of fraud). In fact (and beyond the discussions of *Colonial Bank & Trust* and *Heights Bank*, *supra*), DeNicholas told Bruno that MCC had $3 million in collectible receivables; apparently, DeNicholas did not know the exact total, and what he did know about was worth approximately $500,000. DeNicholas Affidavit at 2.

■■■ Cosmopolitan also maintains that Bruno's fraudulent inducement defense is barred by the parol evidence rule, or merger doctrine. That is, that a complete, valid, written contract merges and supersedes all prior and contemporaneous negotiations and agreements dealing with the same subject matter. *E.g., Courtois v. Millard*, 174 Ill.App.3d 716, 720, 124 Ill.Dec. 360, 362, 529 N.E.2d 77, 79 (5th Dist.1988). Be that as it may, "the parol evidence rule does not preclude a party from presenting evidence that he was fraudulently induced into executing an agreement, even though the false promise involved is flatly inconsistent with the express terms of the writing." *Dellcar & Co. v. Hicks*, 685 F.Supp. 679, 684 (N.D.Ill.1988) (construing Illinois law and *Shanahan v. Schindler*, 63 Ill.App.3d 82, 20 Ill.Dec. 239, 379 N.E.2d 1307 (1st Dist. 1978)); *see also Wilsmann v. Stearns*, 664 F.Supp. 386, 389 (N.D.Ill.1987) ("A party may introduce extrinsic or parol evidence to prove fraud in the inducement of the contract.") (citing *Shanahan*); *Farm Credit Bank of St. Louis v. Isringhausen*, 210 Ill.App.3d 724, 728, 155 Ill.Dec. 235, 237–38, 569 N.E.2d 235, 237–38 (4th Dist.1991) ("parol evidence rule ... does not apply to preclude an allegation of fraud").

In conjunction with its parol evidence theory, Cosmopolitan suggests that the general Illinois rule pertaining to future promises is applicable here. That is, to establish fraud, the pleader must prove the misrepresentation was of "an existing or past fact; a promise to do something in the future is insufficient to establish fraud." *See Sorkin v. Blackman, Kallick & Co.*, 184 Ill.App.3d 873, 880, 133 Ill.Dec. 133, 138, 540 N.E.2d 999, 1004 (1st Dist.1989). The bank cites to *Commonwealth E. Mortgage Co. v. Williams*, 163 Ill.App.3d 103, 114 Ill.Dec. 360, 516 N.E.2d 515 (1st Dist. 1987), as a case "on point" and one demonstrating the futility of Bruno's fraudulent inducement defense.

In *Commonwealth*, the state appellate court upheld the lower court's summary judgment in favor of the plaintiff mortgage company. *Id.* at 115, 114 Ill.Dec. at 367, 516 N.E.2d at 522. Defendant maintained that he had been fraudulently induced to sign the mortgage by the company's promise of future additional financing. The case, however, does not stand for the proposition that a promise for future additional financing is never actionable, but that the particular promise relied on by defendant "is unenforceable because its terms are indefinite and uncertain." *Id.* at 110, 114 Ill.Dec. at 364, 516 N.E.2d at 519. Further, the court noted that defendant had no evidence to substantiate his allegation that the promise of additional financing induced him to sign the mortgage. *Id.* at 114, 114 Ill.Dec. at 367, 516 N.E.2d at 522.

The court's discussion of the exception to the future promises rule, however, suggests that a more definite promise (like the one between Cosmopolitan and Bruno), in conjunction with reliance and inducement, would be actionable. Where the " 'false promise or representation of future conduct is alleged to be the scheme employed to accomplish the fraud,' a claim in fraud is actionable." *Id.* at 113, 114 Ill.Dec. at 367, 516 N.E.2d at 521 (quoting *Steinberg v. Chicago Medical School*, 69 Ill.2d 320, 334, 13 Ill.Dec. 699, 706, 371 N.E.2d 634, 641 (1977)). The court noted that

Ordinarily, a scheme to defraud occurs when a representation is made with intent to induce a third party to rely on it and the third party relies on it to his detriment. [Citation.] Additionally, to support an action in fraud, the statement

(representation) must be certain and definite. [Citation.] To fall within the exception, a party must allege sufficient facts from which a scheme can be inferred. [Citation.]

*Id.* at 113–14, 114 Ill.Dec. at 368, 516 N.E.2d at 522. Bruno's allegations in this vein are sufficient as they pertain to his Rule 276 motion.

■ Cosmopolitan's final two arguments need not detain us long. It argues that the Illinois statute of frauds provisions, Ill. Ann.Stat. ch. 59, paras. 1–18 (Smith–Hurd 1989), bar Bruno's fraudulent inducement defense, since "the collection of receivables would not be completed until the completion of certain construction jobs," and completion of those jobs would take more than one year. The proper test, however, is whether a contract or agreement by its terms "is capable of full performance within a year, not whether such occurrence is likely." *Martin v. Federal Life Ins. Co.,* 109 Ill.App.3d 596, 604, 440 N.E.2d 998, 1004 (1st Dist.1982). Here, full performance was possible within one year.

It also contends that the Illinois Credit Agreements Act, Ill.Ann.Stat. ch. 17, paras. 7100–7103 (Smith–Hurd 1991 Supp.), bars the fraudulent inducement defense. We are unpersuaded by the bank's cursory argument—"[t]he oral agreement alleged by Bruno ... does not satisfy the statute." The one opinion we have uncovered involving these particular paragraphs of state law does not address the issue before us, see *Commercial Bank of Korea, Ltd. v. Charone, Inc.,* No. 90 C 260, 1990 WL 115790 (N.D.Ill. Aug. 3, 1990) (1990 U.S.Dist. LEXIS 10175), and it is unclear to us that Bruno's allegations of fraudulent inducement are covered under a law dealing with credit agreements generally.

### D. *Conclusion*

Because Bruno has set forth a *prima facie* defense of fraudulent inducement, we need not examine his other proffered defenses. Fraudulent inducement is sufficient to enable us to grant his motion, vacate the confession judgment entered against him by the state court, and to permit him to file his verified answer to Cosmopolitan's complaint.

### II. Cosmopolitan's Motion

We turn now to Cosmopolitan's motion to strike portions of Bruno's reply brief. At issue are certain exhibits Bruno appended to the brief, namely a complaint from another case, a magazine article, and a newspaper story. In the context of a motion under Rule 276, Bruno's obligation is to set forth a *prima facie* defense. We have ruled on that motion without discussing the exhibits in question because it was not necessary to consider them; Bruno has handily met his burden without them. That being said, we deny Cosmopolitan's motion as moot. It is so ordered.