BOARD OF TRUSTEES OF THE ILLINOIS MUNICIPAL RETIREMENT FUND, Plaintiff-Appellant, v. FIRST NATIONAL BANK OF CHICAGO, Indiv. and as Trustee, *et al.*, Defendants-Appellees.

First District (5th Division) No. 1—92—4433

Opinion filed April 15, 1994.—Rehearing denied June 28, 1994.—Modified opinion filed June 30, 1994.

Pretzel & Stouffer, Chartered, of Chicago (William E. Kenny, Robert Marc Chemers, and Michael G. Bruton, of counsel), for appellant.

William F. Conlon, James J. Carroll, and Mark B. Blocker, all of Sidley & Austin, and Lynn A. Goldstein, both of Chicago, for appellees.

JUSTICE McNULTY delivered the opinion of the court:

The First National Bank of Chicago (FNBC) is the trustee of an open-end real estate collective investment fund known as "Institutional Real Estate Fund F" (Fund F). The Illinois Municipal Retirement Fund (IMRF) is an employee benefit plan which invested in Fund F. The governing trust agreement requires that the assets of Fund F be invested primarily in real property or investments of any kind relating to real property. Open-end real estate collective investment funds are regulated by the Comptroller of the Currency (OCC). (12 C.F.R. § 9.18 (1993).) By letter dated November 22, 1988, IMRF notified the trustee of its decision to withdraw from Fund F.

Both section 5.2 of the trust agreement and the regulations of the OCC at 12 C.F.R. § 9.18(b)(4) have an impact on withdrawal requests.

It is undisputed that section 5.2 requires that the trustee satisfy any withdrawal request within one year. It is also undisputed that under section 5.4 of the trust agreement FNBC has the option to satisfy a withdrawal request from Fund F in cash, or with property in kind, or partly in cash and partly in kind. Where FNBC opts to redeem units in Fund F by means of a distribution of real property in kind, then FNBC is required to distribute the property, ratably, in fractional shares of all the properties in Fund F, and not in whole properties pursuant to the regulations of the OCC at 12 C.F.R. §§ 9.18(b)(3) and (b)(6).

After receipt of IMRF's withdrawal request, and prior to the expiration of the IMRF's one-year redemption period on November 22, 1989, the trustee made six cash distributions totalling over $20 million to IMRF in partial satisfaction of its withdrawal request.

In a letter dated October 17, 1989, FNBC, through its investment advisor, Brinson, proposed alternative redemption methods to the IMRF for the satisfaction of its withdrawal request from Fund F. The letter stated, in pertinent part, as follows:

"The current liquidity needs of Fund F and the investment situation regarding the real estate therein we believe necessitates that should IMRF's demand for total distribution in November stand, we will have to exercise our option under the governing Declaration of Trust to make an in kind distribution of real estate to you in satisfaction of your withdrawal amount. The Trustee is specifically given that discretion under the governing Declaration.

IMRF's best interests may be served by amending your request in order to withdraw and redeem only so much on each future valuation date, and at values to be determined on those dates, as would be available in cash to be distributed to all withdrawing participants on such date in a pro rata manner. This alternative would assure IMRF a distribution in cash rather than in property. In the meantime, IMRF would continue to be a Participant in the Fund, albeit on an ever diminishing basis through time. The timing of a cash payout as described above is difficult to project and will depend primarily on the timing of asset sales. In connection with the latter, please be advised that property valued at approximately $172,000,000 is currently on the market. We would be glad to discuss with you at any time the method by which an in kind distribution could be made as well as to further explore the alternatives available to you."

According to IMRF's second amended complaint, subsequent to the expiration of the IMRF's one-year redemption period on November 22, 1989, FNBC made a cash distribution to the IMRF in partial satisfaction of the IMRF's request for a withdrawal from Fund F. This distribution redeemed $557,142.51 on December 7, 1989.

On July 10, 1992, the IMRF notified the FNBC, by letter, of its continuing demand for a redemption of its units in Fund F. That letter stated that the IMRF was "prepared to accept cash, or a combination of cash and fractional interests in real property, in satisfaction of its redemption request."

FNBC claims that on January 15, 1993, it satisfied the remainder of IMRF's redemption request through a mixed distribution of cash and fractional interests in all of the Fund F properties.

Prior to the present action, IMRF attempted to state a claim in Federal court. IMRF complained that FNBC had failed to accommodate its withdrawal request within the required one-year period in violation of its fiduciary obligations under the Employee Retirement Income Security Act (ERISA) (29 U.S.C. § 1003(b) (1988)). The court found that Fund F was a "governmental plan" excluded from coverage under ERISA, and, on May 15, 1991, granted FNBC's motion to dismiss.

The IMRF next attempted to state a claim in State court. IMRF filed a complaint in the chancery division of the circuit court of Cook County. The complaint included: (a) legal claims for violations of the Illinois Pension Code (40 ILCS 5/1—101.1 *et seq.* (West 1992)) and the Illinois Trust and Trustees Act (760 ILCS 5/1 *et seq.* (West 1992)), breach of contract, common law and constructive fraud, and negligent misrepresentation, and (b) equitable claims for specific performance, a declaratory judgment, and an injunction, seeking to have the circuit court direct the trustee "to make an immediate cash distribution to the IMRF of its entire balance in Fund F." On January 21, 1992, the circuit court granted defendants' section 2—615 motion to dismiss all counts of the complaint as insufficient as a matter of law. (735 ILCS 5/2—615 (West 1992).) The court stated:

> "The claims are conclusory and vague, specifically since First National Bank offered to fulfill IMRF's redemption request through an in-kind distribution of property, in accordance with the terms of the trust agreement, but plaintiff simply refused to accept that offer of performance."

Subsequently, IMRF filed an amended complaint. The amended complaint also included an equitable claim for an "injunction" as well as seven legal claims for breach of the trust agreement, estoppel, fraud, breach of fiduciary duty, and violations of the Pension Code.

On August 7, 1992, the circuit court dismissed IMRF's amended complaint in its entirety. Its ruling was premised upon IMRF's failure to accept FNBC's offer of an in-kind distribution of property:

> "This Court has again reviewed the October 17, 1989 letter from Brinson Partners, the agent of First National Bank, to Robert

Cusma, the executive director of the Illinois Municipal Retirement Fund. In this letter, the defendant offered to fulfill plaintiff's redemption request through an in-kind distribution of property.

The letter stated that the defendant will quote, 'Exercise its option under the governing declaration of trust to make an in-kind distribution of real estate to you in satisfaction of your withdrawal amount.'

This Court can logically infer that the plaintiff did not accept that offer, as the redemption request remains unfulfilled. Thus, plaintiff's first amended complaint does not change the fact that the defendant offered to perform by making an in-kind distribution *** that the plaintiff simply refused to accept ***.

Accordingly, this Court will grant the defendants' motion and dismiss the plaintiff's first amended complaint in its entirety ***." IMRF was permitted to file a second amended complaint but was warned: "If you come down the pike the same way, I am going to dismiss the matter with prejudice." IMRF's second amended complaint purported to state claims for breach of the trust agreement, breach of fiduciary duty, violation of the Illinois Pension Code, promissory estoppel, fraud, and an injunction.

Once again the circuit court granted defendant's motion to dismiss all of the claims pursuant to section 2—615. (735 ILCS 5/2—615 (West 1992).) The circuit court dismissed the matter with prejudice on December 17, 1992. Again the court reasoned that FNBC had offered by its letter of October 17, 1989, to redeem IMRF shares in Fund F with property and that IMRF had refused to accept that property. On December 21, 1992, IMRF appealed that ruling. The issue is whether the circuit court properly dismissed the plaintiff's second amended complaint by order dated December 17, 1992.

IMRF's position is that the trial court improperly granted FNBC's motion to dismiss the IMRF's second amended complaint for failure to state a cause of action. The alleged breaches are based on FNBC's alleged failure "to properly complete the redemption of the IMRF's interest in Fund F as mandated by the [trust agreement]." IMRF complains that at the end of the one-year redemption period, on November 22, 1989, FNBC was still holding 104,061 of IMRF's units in Fund F which were valued in the Fund F records at $40,859,025.15. IMRF argues that the trial court improperly relied on FNBC's October 17, 1989, letter, which offered an in-kind redemption to IMRF. That letter, according to IMRF, failed to comply with requirements of the group trust and OCC regulations. These requirements and regulations apply to in-kind redemption offers. Specifically, IMRF argues, the letter failed to offer fractional shares of all properties in Fund F, on a ratable basis. IMRF notes that the

United States Court of Appeals for the Seventh Circuit has held that the OCC regulation at 12 C.F.R. § 9.18(b)(6) applied to Fund F and that it required any redemption with property in kind from Fund F to be made in fractional shares of all Fund F properties, on a ratable basis, and not with whole properties. (*First National Bank v. Comptroller of Currency of the United States* (7th Cir. 1992), 956 F.2d 1360.) According to IMRF this holding did not constitute a change in the law. Rather, the OCC regulation at 12 C.F.R. § 9.18(b)(6) had been in effect since 1963. The court of appeals also held that the OCC regulation at 12 C.F.R. § 9.18(b)(4) applied to Fund F and required that redemptions from Fund F be satisfied within one year.

According to IMRF when FNBC issued its letter of October 17, 1989, it had a duty to distribute any in-kind redemptions from Fund F in fractional shares on a ratable basis, and was prohibited from distributing whole properties. IMRF alleges that in breach of this duty, in the October 17, 1989, letter, FNBC offered to distribute whole properties.

In the alternative, IMRF argues that even if the letter had offered a ratable distribution of fractional shares of property FNBC still did not comply with the trust agreement and the fiduciary duties it imposed. The letter, IMRF contends, did not constitute a valid tender of property. Rather than make an unconditional tender of Fund F property to IMRF, the letter presented alternative redemption methods to IMRF. Moreover, the allegations in the second amended complaint raise the issue of whether defendant even had the ability, at that time, to make a valid tender of fractional shares of property to the IMRF. In its second amended complaint IMRF states that "the FNBC never offered or distributed fractional shares of all real estate properties in Fund F to any participating plan in satisfaction of a withdrawal request from Fund F from the time Fund F was established on March 1, 1973 continuing through the date this second amended complaint was filed."

IMRF appears to take the position that FNBC breached a fiduciary obligation to have an operating agreement in place for the joint ownership and management of Fund F.

We disagree. IMRF's claims for monetary damages were properly dismissed. IMRF's second amended complaint failed to allege any breach of the trust agreement. FNBC fulfilled its duty to satisfy any withdrawal request within one year because it offered to perform within one year by making an in-kind distribution but IMRF refused to accept.

The ruling on which IMRF relies in arguing that FNBC's offer was improper, *First National Bank v. Comptroller of Currency of the*

*United States* (7th Cir. 1992), 956 F.2d 1360, was issued two years after FNBC made its offer in the October 17, 1989, letter. Accordingly, on October 17, 1989, FNBC had no reason to believe that a whole property distribution was improper.

IMRF can point to no provision in the trust agreement or the OCC regulations that required an "operating agreement."

We are of the opinion that IMRF failed to state a cause of action against FNBC for failing to redeem IMRF's interest in Fund F in accord with the terms of the trust instrument. Summary judgment as to this issue was proper. Where two parties enter into a lawful contract and one of the parties is ready and willing to perform and makes preparation to perform but is prevented from performing by the other party, the party so ready and willing to perform can recover damages including expenses incurred in making such preparation. (*Izzo v. City of Loves Park* (1959), 20 Ill. App. 2d 117, 155 N.E.2d 312.) Here, FNBC was the party ready and willing to perform and by its October 17, 1989, letter, made preparation to perform by inviting IMRF to choose between alternative methods of redemption. IMRF's failure to do so prevented FNBC from performing by leaving the trustee in a position where it could not know which redemption option, if any, IMRF would choose. FNBC cannot be put in default for not performing when it had no notice of what option IMRF would elect to accept.

The case at bar is analogous to *Miller v. Shea* (1921), 300 Ill. 180, 133 N.E. 183. That case held that where a contract for the purchase of real property requires the vendee to return the vendor's abstract with his objections to "the material defects" in the title, and gives him the option to waive such defects if the vendors fail to have them remedied within 60 days, provided he notifies them of his intention to accept the title as shown, the vendors cannot be put in default for not conveying the title shown by the abstract until they are notified that the vendee has elected to accept it. The vendor was entitled to notice of what defects if any the vendee would waive. In the case at bar, FNBC was entitled to notice of which redemption option, if any, given the alternatives available to it, IMRF would choose. The record does not reveal that IMRF ever gave FNBC any such notice.

We determine that IMRF's remaining efforts to state a cause of action also fail. All of its claims for damages are related to FNBC's timely offer to redeem in cash or in kind or both which the pension fund rejected by silence.

IMRF asserts that "many of [its] claims arose before the expiration of the IMRF's redemption period on November 22, 1989, and are distinct from any redemption issues." IMRF alleges that

FNBC failed to prudently manage Fund F, in the acquisition, valuation, retention, and disposition of properties, in order to protect and enhance the value of Fund F for the participating plans, including IMRF. IMRF also contends that FNBC failed to prudently determine the market values of certain properties in Fund F and made adjustments for material changes in those values on the Fund F records on at least a quarterly basis, in violation of sections 4.1, 4.2 and 4.3(f) of the Group Trust. As a result of the overvaluation of certain properties in Fund F, some withdrawing participating plans were redeemed before May of 1989, at values in excess of the actual market value of their units in violation of section 4.3(f) of the Group Trust. Those redemptions based on excessive valuations diluted the value of the units of the remaining participating plans at that time, including IMRF's units. IMRF claims that as a result of the overvaluation of certain properties in Fund F before May of 1989, IMRF was charged excessive fees based on a percentage of the value placed on those properties in Fund F. Further, IMRF claims that prior to property value write downs in May and October of 1989, FNBC failed to advise IMRF in a timely manner concerning material adverse changes in the value of Fund F and the IMRF's units in Fund F. As a result, IMRF continued its quarterly investments of $5 million from March of 1985 through December of 1987, and Fund F income was reinvested, resulting in loss to IMRF.

Our reading of the trust agreement reveals that the provisions which IMRF relies on gave the trustee the discretion to determine the value of each fund and its units. IMRF's claims are conclusory and insufficient.

IMRF complains that by changing the full cash priority policy FNBC dealt with withdrawing participating plans in an inequitable manner in violation of OCC regulation 12 C.F.R. § 9.18(b)(9)(iii). According to IMRF, FNBC, as a fiduciary, had a duty to disclose to IMRF all material facts relating to the operation and valuation of Fund F. IMRF contends that FNBC's failure to make a timely disclosure of the actual value of Fund F induced IMRF to refrain from submitting its withdrawal request earlier when the full cash priority was in effect before August of 1988. The result was a loss to IMRF.

However, IMRF enjoyed the same distribution policy as other plans which submitted their withdrawal requests after August of 1988. Therefore, they were not treated differently from those similarly situated.

Similarly, IMRF's fraud claims are conclusory and unsupported by facts. Alleged misrepresentations which are statements of future

action fail to state a cause of action. IMRF's allegation that FNBC acted with an intent to induce IMRF's investment is not enough to trigger the exception to the rule prohibiting a cause of action for fraud based on false promises of future conduct. IMRF did not show that any promises were part of a "scheme employed to accomplish the fraud." (*Sorkin v. Blackman, Kallick & Co.* (1989), 184 Ill. App. 3d 873, 880, 540 N.E.2d 999, 1004.) No facts alleged in IMRF's complaint imply any such scheme. IMRF alleges that a single event—the trustee's alleged failure to pay its withdrawal request in cash in 1989—constitutes a "scheme" to defraud IMRF. This contention is conclusory and unpersuasive.

We must arrive at the same conclusion with regard to IMRF's attempt to state a cause of action for promissory estoppel. The record reveals that FNBC did not give IMRF any reason to rely on FNBC to distribute cash rather than property in the event that the IMRF did not insist on a distribution within the one-year redemption period. Rather, the letter merely reminded IMRF that FNBC had the authority to make its distribution in real estate rather than cash and it warned that if IMRF demanded a cash distribution (which it did not), then the timing of that distribution would be difficult to project.

Having construed the pleadings strictly against the movant and liberally in favor of the opponent, as we must, we find that no triable issue of material fact precluding summary judgment exists. (*Purtill v. Hess* (1986), 111 Ill. 2d 229, 489 N.E.2d 867.) We are mindful that summary judgment is a drastic means of disposing of litigation and, therefore, should be allowed only when the right of the moving party is clear and free from doubt. (*Purtill*, 111 Ill. 2d at 240.) In the present case we can say as a matter of law that IMRF has failed to state a cause of action. The circuit court properly dismissed plaintiff's second amended complaint.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

MURRAY, P.J., and COUSINS, J., concur.