BANK OF ILLINOIS IN MT. VERNON, Plaintiff, v. BILL'S KING CITY STATIONERY, INC., a/k/a King City Stationery, Inc., *et al.*, Defendants (Albert E. Weerts *et al.*, Third-Party Plaintiffs-Appellees; Billy A. Petersen *et al.*, Third-Party Defendants-Appellants).

Fifth District   No. 5—89—0014

Opinion filed May 24, 1990.

Terry H. Gamber, of Mt. Vernon, for appellants.

Morris Lane Harvey, of Fairfield, for appellee Albert E. Weerts.

JUSTICE RARICK delivered the opinion of the court:

On June 26, 1986, plaintiff, Bank of Illinois in Mt. Vernon, brought an action in the circuit court of Jefferson County against Bill's King City Stationery, Inc., a/k/a King City Stationery, Inc., Bill Petersen, Lana Petersen McKinney, and Albert and Maxine Weerts, seeking damages in the amount of $48,450.86 for default on a promissory note. The Weertses filed an answer containing an affirmative defense, wherein the Weertses alleged that defendants Petersen and McKinney were not stockholders or officers of the corporation, had no authority to enter into the agreement referred to in the plaintiff's complaint, and that any such obligation was the personal obligation of Petersen and McKinney, not that of King City Stationery. The Weertses subsequently filed a third-party complaint against Petersen and McKinney, alleging breach of a stock-purchase agreement and fraud, seeking $150,000 in compensatory damages and $250,000 in punitive damages.

According to the record, on April 24, 1980, Petersen and the Weertses entered into a stock-purchase agreement whereby Petersen agreed to buy the stock of King City Stationery for $135,000. Petersen was to pay $25,000 down and the balance on a monthly basis, with interest payments beginning on May 1, 1980, and principal payments beginning on May 1, 1982. The agreement provided that Weerts would retain title and possession of the stock until payment was made in full. The agreement also provided that Petersen would operate the business as general manager until that time and would not obligate the corporation for any debts or expenditures other than those incurred in the normal course of operations. The record indicates that Weerts decided to sell his stock to Petersen because of health considerations. He had suffered several heart attacks and his doctor had advised him to get away from the business. This was also why Weerts named Petersen general manager.

On September 26, 1983, while the Weertses still retained title to and possession of the stock, Petersen borrowed $68,059.24 from the Bank of Illinois, pledging the assets of "Bill's King City Stationery" as security. Petersen's signature on the promissory note represents that he was the president of "Bill's King City Stationery," but he admitted at trial that he knew the corporate name had never been changed to "Bill's King City Stationery." Although the stated purpose of the note was for the purchase of inventory and working capital, Petersen's own testimony indicates that the purpose of the loan was to pay off a $50,000 personal debt owed to Security Bank. This note was in

Petersen's name and was secured by the assets of Bill's Office Supply, a company owned by Petersen. The note also bore the purported signature of Lana Petersen, but she denied signing the note. Petersen also borrowed money in the corporate name from First Bank to purchase certain furniture for resale to the Ramada Inn. When the furniture was sold, he did not use the proceeds to pay off the loan, but used it for general operating expenses. As a result of Mr. Petersen's activities, King City Stationery became insolvent and its stock was rendered worthless. Petersen ceased payments to the Weertses under the stock-purchase agreement in May of 1986.

King City Stationery filed no answer to the Bank of Illinois' complaint, and a default judgment was entered against it on February 11, 1987. The Bank's complaint was dismissed as to the other defendants on April 8, 1988, pursuant to a stipulation by the parties, and the case proceeded to trial on the third-party complaint. At the conclusion of the trial, the court found that Petersen had breached the stock-purchase agreement, that the Petersens' conduct as alleged in the third-party complaint was willful and amounted to a fraud on the Weertses, and that the basis for the judgment was fraud. The court awarded the Weertses compensatory damages of $113,026.81 plus interest, punitive damages of $60,000, and costs.

The sole issue raised on appeal concerns the propriety of the punitive damages award. Petersen argues that this case involved a simple breach of contract and that punitive damages cannot be recovered in breach of contract actions. Weerts maintains that the third-party complaint alleged an action for fraud and that the award of punitive damages was therefore proper.

Punitive damages may be awarded in cases of fraud, actual malice, deliberate violence or oppression, when the defendant acts willfully or with wanton disregard for the rights of others. (*Kelsay v. Motorola, Inc.* (1977), 74 Ill. 2d 172, 384 N.E.2d 353.) Punitive damages are in the nature of punishment, designed to deter the defendant and others from such conduct in the future. *Hazelwood v. Illinois Central Gulf R.R.* (1983), 114 Ill. App. 3d 703, 450 N.E.2d 1199.

Generally, punitive damages are not available in breach of contract actions, however, because a party suing for breach of contract is entitled only to the benefit of his bargain and the purpose of awarding damages is to place the injured party in the position he would have been had it not been for the breach. (*Hutchinson v. Brotman-Sherman Theatres, Inc.* (1981), 94 Ill. App. 3d 1066, 419 N.E.2d 530; *Ledingham v. Blue Cross Plan for Hospital Care of Hospital Service Corp.* (1975), 29 Ill. App. 3d 339, 330 N.E.2d 540, *rev'd on other grounds* (1976), 64

Ill. 2d 338, 356 N.E.2d 75.) An exception to this rule exists where the breach constitutes an independent tort for which punitive damages are recoverable. *Morrow v. L.A. Goldschmidt Associates, Inc.* (1986), 112 Ill. 2d 87, 492 N.E.2d 181; *Skorin v. Blackman, Kallick & Co.* (1989), 184 Ill. App. 3d 873, 540 N.E.2d 999; *Salvator v. Admiral Merchants Motor Freight* (1987), 156 Ill. App. 3d 930, 509 N.E.2d 1349; *Wallace v. Prudential Insurance Co.* (1973), 12 Ill. App. 3d 623, 629-30, 299 N.E.2d 344, 349; Restatement (Second) of Contracts § 355 (1977).

■ In order to support the existence of an independent tort, a plaintiff need only allege facts which would bring his claim for punitive damages within a recognized tort theory. (*Illinois Sterling, Inc. v. KDI Corp.* (1975), 33 Ill. App. 3d 666, 338 N.E.2d 51.) In their third-party complaint, the Weertses set forth numerous acts of Petersen's which they allege to be a breach of contract. The complaint further alleges that such conduct was fraudulent *and that as a result of such conduct, the stock of the corporation was rendered worthless.* The Weertses' complaint is based on more than breach of contract. It was not Petersen's cessation of payments under the contract that formed the basis of the Weertses' complaint, but the damage done to the corporation as a result of Petersen's breach of the covenant not to obligate the company to significant amounts of debt not incurred in the normal course of operation. The Weertses' complaint clearly sounds in tort, not contract.

The Weertses' complaint alleges, and the trial court found, that Petersen's conduct was fraudulent, and specifically stated such fraudulent conduct was the basis for its decision. We do not consider whether the Weertses' complaint alleges sufficient facts to state a cause of action for the tort of fraud, however, as Petersen does not argue that the allegations in the third-party complaint are insufficient to allege fraud, nor could he, the Weertses point out, as he waived this argument by not challenging the sufficiency of the allegations in the trial court. (*Worner Agency, Inc. v. Doyle* (1984), 121 Ill. App. 3d 219, 459 N.E.2d 633.) Likewise, Petersen does not argue that the trial court's finding of fraud was against the manifest weight of the evidence.

Based on the foregoing analysis, we hold that the award of punitive damages was proper and affirm the judgment of the circuit court of Jefferson County.

Affirmed.

WELCH and CHAPMAN, JJ., concur.