LARRY KOEHLER *et al.*, Plaintiffs-Appellants, v. THE FIRST NATIONAL BANK OF LOUISVILLE, Defendant-Appellee (Bank of West Frankfort *et al.*, Defendants).

Fifth District   No. 5—90—0817

Opinion filed August 14, 1992.

Gordon Lambert, of Harris & Lambert, of Marion, for appellants.

Brian D. Lewis, of Mitchell & Armstrong, Ltd., of Marion, for appellee.

JUSTICE HENRY LEWIS delivered the opinion of the court:

The plaintiffs, Larry Koehler and Carol Koehler, who are husband and wife, brought suit in six counts against three defendants, the First National Bank of Louisville, the Bank of West Frankfort, and the Bank of Egypt. In this appeal by the plaintiffs, brought pursuant to Supreme Court Rule 304(a) (134 Ill. 2d R. 304(a)), we are concerned with only count V of the second amendment to plaintiffs' complaint, which is directed against a single defendant, the First National Bank of Louisville (hereafter referred to as the Bank). In this count the plaintiffs sought both compensatory and punitive damages, alleging that, by the Bank's failure and refusal to close a certain loan with the plaintiffs, the Bank breached its "implied duty of good faith and fair dealing" owed to the plaintiffs. The trial court dismissed count V for failure to state a cause of action "recognized by the law of this state." This interlocutory appeal followed in which the plaintiffs raise two issues for review: whether count V states a cause of action for the breach of the duty of good faith and fair dealing arising out of the contractual relationship and whether count V appropriately pleads allegations for punitive damages.

A motion to dismiss a complaint admits as true all properly pleaded facts and should not be granted unless it clearly appears from the pleadings that the plaintiff would not be entitled to recover under any set of facts which could be proved. (*Powers v. Delnor Hospital* (1985), 135 Ill. App. 3d 317, 481 N.E.2d 968.) In count V the plaintiffs allege that in January or February of 1987 they responded to a newspaper advertisement for fixed-rate mortgages to refinance homes at 8.125% interest for 15 or 30 years. Plaintiffs allege that they applied for such a mortgage and that the Bank of Egypt or the Bank of West Frankfort, both of which are owned by the Banterra Corporation, called the Bank and obtained a verbal commitment that the Bank would guarantee that $50,000

would be set aside for a period of 45 days from February 27, 1987, through April 13, 1987, for plaintiffs to borrow at the rate of 8.25%. The information was conveyed to the plaintiffs, who agreed to these terms on the same day. Plaintiffs allege that thereafter a commitment memo containing the terms of the agreement between the parties was prepared by the Bank of Egypt and submitted to the Bank. Thereafter, the plaintiffs submitted a signed loan application to refinance the existing loan on their residence on which they were paying interest at the rate of 11.5%. At the time they submitted the loan application they paid a "lock-in" fee of $500.

Plaintiffs allege that the Bank approved their loan application but later failed to close the loan at interest of 8.25%, as stated in the commitment memo, and have refused to conclude the loan at that rate. The Bank gave plaintiffs two reasons for its failure to close the loan at that rate of interest: (1) the date of employment given by Carol Koehler on the application was August 15, 1987, although the form was dated March 3, 1987, and (2) a credit report showed a balance owed to a savings and loan institution for a loan in addition to the one plaintiffs sought to refinance. The plaintiffs allege that during the first two weeks of April 1987, interest rates increased significantly over 8.25% and that "defendant's failure and refusal to conclude and close the loan with plaintiffs at 8.25 per cent as above stated was done by defendant with such knowledge and for the purpose of coercing plaintiffs to accept a rate of interest higher than 8.25 per cent from defendant." Plaintiffs allege that the Bank was advised that the error concerning the verification of Carol Koehler's employment was a typographical one, the correct date being August 15, 1986, and that the credit bureau report meant to show that a prior mortgage in the amount of $18,000 had been paid with no balance due. The plaintiffs allege further that the failure and refusal of the Bank to close the loan of $50,000 for 15 years at a rate of interest of 8.25% by relying on the two reasons set forth above and with knowledge of the significant increase in interest rates during the first two weeks of April 1987, together with its purpose of coercing plaintiffs to accept a higher rate of interest, constituted a breach of the Bank's implied duty of good faith and fair dealing owed to the plaintiffs. As a proximate result, the plaintiffs allege, they were required to continue making mortgage payments at an interest rate of 11.5% and have suffered as compensatory damages the difference since April 13, 1987, between the amount of interest paid at the rate of 11.5% and the amount of interest paid at a rate of 8.25%. Plaintiffs seek punitive damages in

the sum of $10,000, alleging that the Bank's action "was done with malice and/or with an utter indifference to or a conscious disregard for the safety of the plaintiffs' property, and for the purpose of making additional profits from plaintiffs."

In granting the Bank's motion to dismiss count V in its order of June 26, 1990, the trial court expressed the opinion that this count, "which purports to sound in tort and seeks punitive damages, fails to state a cause of action recognized by the law of this state. This is a contract case." The trial court subsequently denied the plaintiffs' motion for rehearing concerning its granting of the motion to dismiss count V and, in an order filed November 21, 1990, found that there was no just reason for delaying enforcement or appeal of its order of June, 26, 1990.

We note that in an order entered on October 27, 1989, the trial court granted the motion of the Bank for summary judgment with respect to count II and granted the motion of all three defendants to dismiss count IV. Thereafter, in its order of November 20, 1990, the trial court found that there was no just reason for delaying enforcement or appeal of its order of October 27, 1989. However, as we have already indicated, in this interlocutory appeal we are asked to consider only count V. Trial on the remaining counts, including count I sounding in contract against the Bank, was continued by the trial court pending the outcome of plaintiffs' interlocutory appeal.

Concerning the first issue presented for review, plaintiffs contend that count V states sufficiently a cause of action for the breach of the duty of good faith and fair dealing. Maintaining that "it is firmly established that a contractual relationship may give rise to both a contractual cause of action and a tort cause of action and that a breach of the duty of good faith and fair dealing is both a contract action and a tort action," plaintiffs assert that "[t]his is a separate tort that flows from the set of facts originating in a contractual relationship" and that "this is the type of situation for which the tortious breach of contract theory was designed." Plaintiffs rely principally upon the line of insurance-related cases that originated with *Ledingham v. Blue Cross Plan for Hospital Care of Hospital Service Corp.* (1975), 29 Ill. App. 3d 339, 330 N.E.2d 540, *rev'd on other grounds* (1976), 64 Ill. 2d 338, 356 N.E.2d 75, and includes *Hoffman v. Allstate Insurance Co.* (1980), 85 Ill. App. 3d 631, 407 N.E.2d 156, *Lynch v. Mid-America Fire & Marine Insurance Co.* (1981), 94 Ill. App. 3d 21, 418 N.E.2d 421, *Kohlmeier v. Shelter Insurance Co.* (1988), 170 Ill. App. 3d 643, 525 N.E.2d 94,

and *Raprager v. Allstate Insurance Co.* (1989), 183 Ill. App. 3d 847, 539 N.E.2d 787.

■ It is true that cases have held that every contract contains an implied covenant of good faith and fair dealing. (*Carlson v. Carlson* (1986), 147 Ill. App. 3d 610, 498 N.E.2d 708.) The same conduct may give rise in some cases to both tort and contract theories of recovery. (*Martin v. Federal Life Insurance Co.* (1982), 109 Ill. App. 3d 596, 440 N.E.2d 998.) In *Chicago College of Osteopathic Medicine v. George A. Fuller Co.* (7th Cir. 1983), 719 F.2d 1335, the court observed that no Illinois case or statute supports a cause of action for bad-faith dealing outside the areas of insurance and employment law. In *Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172, 384 N.E.2d 353, the supreme court first recognized the tort action of retaliatory discharge in an at-will employment situation based upon public policy. (*Chicago College of Osteopathic Medicine*, 719 F.2d 1335.) In the area of insurance law, the rationale for recognizing a cause of action for bad-faith dealing is grounded, in large part, on the special relationship between the insurer and the insured. (See *Buehler Ltd. v. Home Life Insurance Co.* (N.D. Ill. 1989), 722 F. Supp. 1554.) Care must be taken to prevent the transmutation of every breach of contract into an independent tort action through the bootstrapping of the general contract principle of good faith and fair dealing. *Martin*, 109 Ill. App. 3d 596, 440 N.E.2d 998.

■ The policy considerations undergirding *Kelsay* and the insurance-related cases upon which plaintiffs rely are plainly inapplicable to the instant case. In the absence of compelling policy considerations, we decline to extend the cause of action for bad-faith dealing to this area of the law. The trial court properly concluded that count V fails to state a cause of action cognizable in Illinois and rightly described the plaintiffs' cause as a contract action.

In light of our disposition of this issue, we need not consider the remaining issue concerning punitive damages sought in count V. As we have said, in that count plaintiffs alleged that the Bank had engaged in tortious conduct for which they sought both compensatory and punitive damages. We note that, generally, punitive damages are not available in actions for breach of contract because a party suing for breach of contract is entitled only to the benefit of his bargain and the purpose of awarding damages is to place the injured party in the position he would have been had it not been for the breach (*Bank of Illinois v. Bill's King City Stationery, Inc.* (1990), 198 Ill. App. 3d 434, 555 N.E.2d 1133). An exception to this rule exists where the breach constitutes an independent tort for

684

which punitive damages are recoverable. (*Bank of Illinois*, 198 Ill. App. 3d 434, 555 N.E.2d 1133.) However, in the instant case the breach of contract alleged does not constitute an independent tort. Hence, no punitive damages are recoverable.

Affirmed.

HARRISON and WELCH, JJ., concur.